IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 28, 2018

**STATE OF TENNESSEE v. KENNEDY FLEMING**

**Appeal from the Criminal Court for Hamilton County
No. 286635    Barry A. Steelman, Judge**

_____

**No. E2017-02352-CCA-R3-CD**

_____

Defendant, Kennedy Fleming, appeals from the trial court's order revoking his sentence of probation and ordering him to serve the balance of his sentence in confinement. Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and TIMOTHY L. EASTER, JJ., joined.

Joshua P. Weiss, Chattanooga, Tennessee (on appeal) and Steven E. Smith, District Public Defender; and Mike Little, Assistant Public Defender (at trial) for the appellant, Kennedy Fleming.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; M. Neal Pinkston, District Attorney General; and Lance Pope, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual background*

Defendant was indicted by the Hamilton County Grand Jury for one count of aggravated rape, a Class A felony. Following a mistrial, Defendant pleaded guilty on March 24, 2014, to the amended charge of rape, a Class B felony, and received a sentence of eight years to be suspended on probation after 11 months and 29 days in confinement. By an order dated February 8, 2016, the trial court partially revoked Defendant's probation based on new charges of aggravated assault and false imprisonment.

Defendant was returned to probation on June 26, 2016. As a condition of his probation, Defendant was ordered not to have any contact with the victim, Wanda Harvey.

On December 16, 2016, a probation violation report was filed, alleging that Defendant had been arrested for aggravated domestic assault on December 15, 2016, in violation of two conditions of Defendant's probation: 1) that the defendant would obey federal and state laws; and 2) that the defendant would "not engage in any assaultive, abusive, threatening, or intimidating behavior."

A revocation hearing was held on November 1, 2017. Martin Tyler Reeves, a probation officer for the Tennessee Department of Correction, testified that he began monitoring Defendant in June 2016. On December 15, 2016, an officer with the Chattanooga Police Department notified Mr. Reeves that a warrant had been issued for Defendant's arrest for the aggravated domestic assault of Ms. Harvey.

Ms. Harvey testified that she and Defendant had a three-year relationship. On December 14, 2016, she and Defendant went to a bar called Mary's Lounge. She and Defendant shared a bottle of bourbon, and they were both intoxicated. Ms. Harvey testified that Defendant was "rude" and "belligerent." Ms. Harvey decided to leave while Defendant was in the restroom. Defendant followed her out of the bar. Defendant was "right on [her] heels" and "pulling on [her] wrist." Ms. Harvey picked up a "heavy" metal ashtray and hit Defendant in the arm with it. She testified that she and Defendant were "slapping" each other's faces, and Defendant "slammed [her] in the back of the head" and "grabbed [her] around [her] throat and start[ed] choking [her]." Ms. Harvey testified that she "almost blacked out." Ms. Harvey had "two big bruise[s], blood knots" on the back of her head. A car in the parking lot approached them, and the occupants told Ms. Harvey to leave with them. Ms. Harvey left with them "to get away from [Defendant]." Ms. Harvey reported the incident to police that night. Ms. Harvey testified that she did not "think [the incident] should take any more of [Defendant's] life away." She testified "prison is a hard place for just one fist or, you know, one punch and one choke."

Defendant testified at the hearing that he followed Ms. Harvey out of the bar to the parking lot and "asked her what she was doing." He testified that he "wasn't going to just leave her out there and not have no [sic] way home." He testified that Ms. Harvey "just went crazy and got that ashtray thing and swung it at [him] and hit [him] and then it broke [his] watch off [his] arm." Defendant testified that he did not know what Ms. Harvey was upset about. He testified that Ms. Harvey "slapped [him] in the face and knocked [his] glasses off." Ms. Harvey then left in the car that pulled up to them. Defendant testified, "I went my way; she went her way."

Defendant denied that he choked Ms. Harvey. He testified that she "grabbed onto a tree [and he] tried to pull her off the tree." He testified he "was trying to get her to . . . tell [him] why she was so upset at [him]." Defendant testified that he had "a little buzz" from the alcohol they drank. Defendant acknowledged that he called Ms. Harvey from jail. He testified, "I didn't have nobody [sic] else to call." He testified that he and Ms. Harvey had been living on the streets together when he was not incarcerated and that they were "all each other got [sic]."

*Analysis*

Defendant argues on appeal that the trial court erred in revoking his probation and ordering him to serve his original sentence incarcerated. Specifically, Defendant argues that the State failed to establish a probation violation by a preponderance of the evidence because Ms. Harvey's testimony was uncorroborated and not credible; that the trial court abused its discretion by considering the facts underlying Defendant's original conviction in revoking his probation; and that the trial court improperly considered Defendant's use of alcohol and evidence of jail telephone calls. The State responds that the trial court acted within its discretion to order him to serve his original sentence. We agree with the State.

Upon a finding by a preponderance of the evidence that a defendant has violated a condition of his or her probation, a trial court may revoke probation and order the imposition of the original sentence. T.C.A. §§ 40-35-310, -311; *State v. Kendrick*, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005) (citing *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991)). Proof of a violation does not need to be established beyond a reasonable doubt. *State v. Milton*, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984). We will not disturb the trial court's ruling on appeal absent an abuse of discretion. *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001) (citing *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991)). To establish an abuse of discretion, a defendant must show that there is "no substantial evidence" in the record to support the trial court's determination that a violation of probation has occurred. *Id*. If the record clearly shows that "the trial judge exercised conscientious judgment in making the decision rather than acting arbitrarily[,]" there is no abuse of discretion. *State v. Leach*, 914 S.W.2d 104, 107 (Tenn. Crim. App. 1995).

Once a trial court has determined that a violation of probation has occurred, the court has the discretionary authority to: "(1) order confinement; (2) order execution of the sentence as originally entered; (3) return the defendant to probation on appropriate modified conditions; or (4) extend the defendant's probationary period by up to two years." *State v. Brandon L. Brawner*, No. W2013-01144-CCA-R3-CD, 2014 WL 465743, at *2 (Tenn. Crim. App. Feb. 4, 2014) (citing T.C.A. §§ 40-35-308(a), -308(c), -

310, -311(e); *State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999)). The determination of the proper consequences of the probation violation embodies a separate exercise of discretion. *State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007).

At the revocation hearing, Ms. Harvey testified that Defendant followed her out of the bar and across the street to a parking lot. She testified that Defendant "slammed [her] in the back of the head" and choked her until she nearly lost consciousness. The trial court found Ms. Harvey's testimony to be credible, stating, "I believe Wanda Harvey when she testified that [Defendant] followed her outside, that he hit her in the back of the head, that he caused pump knots on her head, and that he choked her almost to the point of blacking out." Defendant argues that Ms. Harvey's testimony was no more credible than his testimony because Ms. Harvey was intoxicated at the time of the incident and had a history of mental illness. However, "[i]n probation revocation hearings, the credibility of the witnesses is for the determination of the trial judge, who is in the best position to observe witness demeanor." *State v. Beard*, 189 S.W.3d 730, 735 (Tenn. Crim. App. 2005) (citing *Bledsoe v. State*, 387 S.W.2d 811, 814 (Tenn. 1965)). Indeed, "the trial judge's findings in probation revocation proceedings carry the weight of a jury verdict." *Beard*, 189 S.W.3d at 735 (citing *State v. Wall*, 909 S.W.2d 8, 10)). This court will not reevaluate the trial court's credibility determinations.

Defendant contends that the trial court improperly considered Defendant's prior guilty plea to rape and his prior assault against Ms. Harvey. The State responds that the trial court considered Defendant's prior misconduct in determining what punishment to impose, and not in determining whether Defendant had violated probation.

At the conclusion of the revocation hearing, the trial court stated, "I am considering this in the context of the evidence that I heard from the rape conviction in which [Defendant] was accused of closing a door and holding a stick to a woman's throat and forcing vaginal penetration." The court concluded as follows:

> Now, [Ms. Harvey] says that she doesn't believe that this is enough to send [Defendant] to the penitentiary, but [Ms. Harvey] didn't hear the proof in the rape case this Court did and this Court accepted [Defendant]'s plea in the rape case. And these two assaults against [Ms. Harvey] who he says he loves, one of which resulted in her almost blacking out as a result of his choking her, his striking her in the head to cause blood knots, she used that word, pump knots, and a prior assault on [Ms. Harvey] plus a conviction for rape to which he pled guilty, the Court finds that's sufficient evidence to find not only that [Defendant] has violated his probation, which I do find by a preponderance of the

- 4 -

evidence, and I sustain the revocation and I order that his [D]epartment of [C]orrection[ ] sentence be ordered into execution.

A trial court may not revoke probation based on past criminal acts that were known to the trial court at the time probation was originally granted. *State v. Marcus Nigel Davis*, No. E2007-02882-CCA-R3-CD, 2008 WL 4682238, at *5 (Tenn. Crim. App. Oct. 23, 2008). However, the trial court may review a defendant's past criminal history in order to determine, based on a totality of the circumstances, "whether the beneficial aspects of probation [are] being served" and whether the defendant is amenable to continued probation. *Id*.

In this case, the trial court found that Defendant had violated the conditions of his probation by committing an assault against Ms. Harvey on December 14, 2016. We conclude that the proof supports the trial court's conclusion. The trial court also determined that Defendant's probation should be revoked. The trial court noted that Defendant had previously violated probation. Two probation violation reports were filed with the trial court subsequent to Defendant's conviction, demonstrating Defendant's continued criminal conduct. In considering Defendant's conduct that was the basis for his guilty plea, the trial court stated that it was considering the evidence to explain why, contrary to Ms. Harvey's belief, Defendant should serve his sentence in confinement. Accordingly, the trial court revoked Defendant's probation based on conduct which occurred subsequently to the grant of probation, and considered Defendant's criminal history solely to determine "whether the beneficial aspects of probation were being served." *See Marcus Nigel Davis*, 2008 WL 4682238, at *5. The trial court did not abuse its discretion when it revoked Defendant's probation and ordered him to serve his sentence in confinement.

Finally, Defendant contends that the trial court inappropriately considered evidence that Defendant drank alcohol and made phone calls to Ms. Harvey from jail, which were not alleged in the violation report. Generally, "[t]he revocation of probation based on grounds not alleged and noticed to the defendant is a violation of due process." *State v. Chad Allen Conyers*, No. E2004-00360-CCA-R3-CD, 2005 WL 551940, at *4 (Tenn. Crim. App. Mar. 9, 2005); *see State v. Wade*, 863 S.W.2d 406, 408 (Tenn. 1993). Although evidence of these additional violations was presented at the revocation hearing, it did not form the basis of the trial court's determination that Defendant violated probation. At the conclusion of the revocation hearing, the trial court noted,

In addition to [the assault against Ms. Harvey], [Defendant], who chose to testify, was cross-examined about other things that were not in the violation report to start with but are definitely violations of his probation. Someone who is accused of rape, who has pled guilty to rape, crime of

violence, is ordered while on probation not to use alcohol and he certainly should not be completing and emptying a bottle of Canadian Mist in one night.

The trial court found that Defendant violated probation by committing an assault against Ms. Harvey, and the record supports the trial court's finding that Defendant committed this violation. *See State v. Ricky Davis*, No. 03C01-9706-CC0-00215, 1998 WL 205925, at *2 (Tenn. Crim. App. Apr. 29, 1998) (concluding that although the trial court erred in relying on grounds not listed in the warrant, other evidence supported the revocation).

CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court revoking Defendant's probation and ordering the balance of his sentence to be served in the Tennessee Department of Correction.

_____
THOMAS T. WOODALL, JUDGE